UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

RONALD DECOSTER,

       Plaintiff,

v.                                                                 Case No. 17-C-1623

WAUSHARA COUNTY HIGHWAY DEPARTMENT, *et al.*,

       Defendants.

---

## ORDER GRANTING SUMMARY JUDGMENT

---

Plaintiff Ronald DeCoster brought this action against Defendants Waushara County and the Waushara County Highway Department (collectively "the County") seeking compensation for litigation costs and expenses, including attorney's fees, incurred in connection with an alleged taking of his property by the County. DeCoster asserts his claim for compensation under the Uniform Relocation Assistance, Acquisition and Real Property Policies Act of 1970 (the "URA"), 42 U.S.C. § 4601, *et seq.*, as well as 49 C.F.R. § 24.107 and Wis. Stat. § 32.19(3)(d). He also seeks damages under 42 U.S.C. § 1983. The court has jurisdiction under 28 U.S.C. § 1331. The case is before the court on the County's motion for summary judgment. For the reasons that follow, the County's motion will be granted and the case dismissed.

## BACKGROUND

DeCoster and his wife, Nicole, own land located at N6190 County Road I in Fremont, which is in Waushara County, Wisconsin. DeCoster Aff. ¶ 1, ECF No. 21. In the fall of 2009, the Wisconsin Department of Transportation (WisDOT) authorized a reconstruction project on County Trunk I. Def.'s Proposed Material Facts (DPMF) ¶ 1, ECF No. 18 (citing Compl. ¶ 8, ECF No. 1).

The reconstruction project relied largely on funding from the federal government, although WisDOT also contributed some funds for the project costs. *Id.* ¶ 2 (citing Compl. ¶ 10). Part of the project included reconstruction of a highway bridge over Alder Creek, which runs east to west and cuts across the DeCosters' property. *Id.* ¶ 3 (citing Compl. ¶ 12). Because the bridge was adjacent to the DeCosters' property, the reconstruction projected affected a parcel of their property containing approximately 300 feet of fencing. *Id.* ¶ 5; Compl. ¶ 16; Pl.'s Statement of Facts (PSF) ¶¶ 4–5, ECF No. 23.

The County believed that the fence encroached four feet onto the highway right of way, but DeCoster maintained that it was properly on his property. DPMF ¶¶ 5–6; PSF ¶ 5. When the County asked DeCoster to apply for a revocable occupancy permit, which would have allowed the fence to remain in place subject to removal if necessary, DeCoster declined the request. DPMF ¶¶ 7–8; PSF ¶ 7. Subsequently, the County issued an order under Wis. Stat. § 83.01(7)(f) to remove the fence. DPMF ¶ 9. DeCoster refused to comply with the order, so the County commenced an action in the Waushara County Circuit Court to secure removal under Wis. Stat. § 86.04. DPMF ¶¶ 9–10 (citing Compl. ¶ 17). The DeCosters filed a counterclaim for inverse condemnation. *Id.* ¶ 11 (citing Compl. ¶ 18).

In January 2013, the circuit court approved a stipulation between the DeCosters and the County. *See* Stip., ECF No. 1-1 at 7–9. Under the stipulation, the County agreed to pay the DeCosters $7,948.24 in exchange for a quitclaim deed to two parcels of land. Stip. ¶ 1. Although the County expressly maintained that no taking had occurred, it also agreed that the court could treat its acquisition of the property as a taking for the limited purpose of determining whether the DeCosters could recover their litigation expenses under Wis. Stat. § 32.28. Stip. ¶ 2. DeCoster

provided the County with the quitclaim deed in May 2013, and the County now owns the disputed parcel. DPMF ¶ 15 (citing Compl. ¶ 20).

In the subsequent litigation regarding their efforts to recover their litigation expenses, the DeCosters sought a $110,000 reimbursement. Compl. ¶ 21. After holding an evidentiary hearing and considering post-hearing briefing, the circuit court issued an extensive memorandum decision in December 2013 awarding litigation expenses of $31,560.91 to the DeCosters. DPMF ¶¶ 17–18; Compl. ¶ 21; *see also* ECF No. 17 at 9–58. The circuit court reasoned that the DeCosters' litigation expenditures were reasonable through April 2011—when the County offered a settlement similar to the ultimate stipulated sale amount—but all subsequent expenses incurred were not. ECF No. 17 at 43. After the circuit court entered judgment in January 2014, the DeCosters appealed, but the Wisconsin Court of Appeals affirmed the circuit court's decision and the Wisconsin Supreme Court denied their petition for review. DPMF ¶¶ 19–21 (citing Compl. ¶ 22). The County ultimately issued a check to the DeCosters for $31,560.91, but the DeCosters have not cashed that check. *Id.* ¶ 22 (citing Compl. ¶ 24).

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (quoted source and internal quotation marks omitted). "The nonmoving party must do more than simply

3

show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotation mark omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

**ANALYSIS**

The URA serves the express purpose of "establish[ing] a uniform policy for the fair and equitable treatment of persons displaced as a direct result of programs or projects undertaken . . . with Federal financial assistance." 42 U.S.C. § 4621(b). The URA accomplishes this goal, at least in part, by providing that the head of a federal agency may not approve the use of federal financial assistance by an acquiring state agency without receiving assurances that property owners will be reimbursed for necessary expenses as provided for in 42 U.S.C. §§ 4653 and 4654. 42 U.S.C. § 4655(a)(2). As relevant here, § 4654(a) provides that an agency acquiring real property "shall award the owner of any right, or title to, or interest in, such real property such sum as will in the opinion of the court reimburse such owner for his reasonable costs, disbursements, and expenses, *including reasonable attorney, appraisal, and engineering fees, actually incurred* because of the condemnation proceedings." (Emphasis added.) In turn, 49 C.F.R. § 24.107(c) clarifies that "[t]he owner of the real property shall be reimbursed for any reasonable expenses, including reasonable attorney, appraisal, and engineering fees, which the owner actually incurred because of a condemnation proceeding, if . . . [t]he Agency effects a settlement of such proceedings."[1] Wisconsin

---

[1] As a political subdivision of the state, the County satisfies the definition of "Agency" in the regulation. *See* 49 C.F.R. § 24.2(a)(1); *see also* 42 U.S.C. § 4601(3).

4

law expressly incorporates these URA provisions into state condemnation law, providing that, "in the case of a program or project receiving federal financial assistance, a condemnor shall . . . make any additional payment required to comply with the federal [Uniform Act], 42 USC. 4601 to 4655, and any regulations adopted thereunder." Wis. Stat. § 32.19(3).

The URA does not provide for an express private right of action that would permit DeCoster to proceed against the County on a claim for litigation expenses. *See Delancey v. City of Austin*, 570 F.3d 590, 593 n.4 (5th Cir. 2009). Consequently, DeCoster's assertion that the County failed to pay his reasonable litigation expenses turns upon whether the URA created an implied private right of action that would allow him to proceed on a claim for damages under 42 U.S.C. § 1983. Critically, "[i]n order to seek redress through § 1983, . . . a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997). An evaluation of three factors can assist the court in determining whether a federal statute creates a private right enforceable under § 1983:

> First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.

*BT Bourbonnais Care, LLC v. Norwood*, 866 F.3d 815, 820 (7th Cir. 2017) (quoting *Blessing*, 520 U.S. at 340–41). These factors, however, "set the bar high," as "nothing 'short of an unambiguously conferred right [will] support a cause of action brought under § 1983.'" *Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health*, 699 F.3d 962, 968 (7th Cir. 2012) (alteration in original) (quoting *Gonzaga University v. Doe*, 536 U.S. 273, 283 (2002)). "Accordingly, where the

5

text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action." *Gonzaga*, 536 U.S. at 286.

Although the Seventh Circuit has not addressed whether the URA gives rise to a private right of action enforceable under § 1983, DeCoster directs the court's attention to *Pietroniro v. Borough of Oceanport*, 764 F.2d 976 (3d Cir. 1985). There, the Third Circuit concluded without significant analysis that, "[i]n the absence of a comprehensive enforcement scheme within the regulatory scheme which encompasses the plaintiff's complaint[,] there exists a private cause of action against state officials for violations of the . . . URA." *Id.* at 980 (citing *Maine v. Thiboutot*, 448 U.S. 1 (1980)). But that decision predates the Supreme Court's *Gonzaga* opinion, in which the Court expressly rejected the idea that a cause of action exists in the absence of an "unambiguously conferred right." 536 U.S. at 283.

The Fifth Circuit's post-*Gonzaga* decision in *Delancey v. City of Austin* provides a more persuasive analysis concluding that the URA does not give rise to an implied private right of action enforceable under § 1983. 570 F.3d 590 (5th Cir. 2009). There, the plaintiffs argued that a private right of action arose under 42 U.S.C. § 4625(b)–(c). Subsection (b) provides that the "head of any displacing agency" must "ensure that the relocation assistance advisory services described in subsection (c) . . . are made available to all persons displaced by such agency." *Id.* Concluding that the URA did not show evidence of an implicit intent by congress to create a private right of action, the Fifth Circuit noted that § 4625(b) directs its mandate at an agency head, rather than individuals benefitted by the statute, like the statute in *Gonzaga* that did not give rise to a private right of action. *Delancey*, 570 F.3d at 594 ("Statutes that focus on the person regulated rather than the individuals

6

protected create 'no implication of an intent to confer rights on a particular class of persons.'" (quoting *Alexander v. Sandoval*, 532 U.S. 275, 289 (2001))). Also significant to the Fifth Circuit was the fact that § 4625 speaks in terms of establishing a uniform policy or practice for implementation, rather than "rights-creating language like that in Titles VI and IX." *Id.* at 594–95.

For these same reasons, 42 U.S.C. §§ 4654 and 4655 do not, as DeCoster contends, give rise to an implied private right of action. As already noted, § 4655(a) permits "the head of a Federal agency" to approve federal financial assistance for certain state agency projects only if the acquiring agency, among other things, provides adequate assurance that property owners will be reimbursed for certain expenses. Section 4654(a) then defines the substance of the reimbursable expenses, which include attorney, appraisal, and engineering fees incurred because of condemnation proceedings. Rather than establishing a "right" to the reimbursement of certain kinds of expenses, these sections direct federal agency heads to exercise their discretion to approve the use of federal funds in certain limited ways. These sections therefore fail to unambiguously confer a right in the manner necessary to imply the existence of a private cause of action under *Gonzaga*. *See also Hoeft v. City of Beaver Dam*, No. 2014AP2790, 2015 WL 3887035, ¶¶ 30–33 (Wis. Ct. App. June 25, 2015) (concluding that URA, specifically 42 U.S.C. §§ 4601 and 4651, does not give rise to a private cause of action). Absent an implied private cause of action under the URA, Plaintiff cannot proceed directly under the URA in Count I of his complaint or under 42 U.S.C. § 1983 in Count II.

To the extent that DeCoster seeks recovery of his litigation expenses under Wis. Stat. § 32.19(3)(d), his claim is precluded by the state court judgment. As noted above, when a project relies on federal financial assistance, Wis. Stat. § 32.19(3)(d) requires that a condemnor make any payments required by the URA. But DeCoster has already obtained a final judgment on the merits

7

of his claim for litigation expenses under Wisconsin law in state court. He has no legal right to seek a second determination of his recoverable expenses in federal court. The Supreme Court has held that 28 U.S.C. § 1738 implements the Constitution's Full Faith and Credit Clause and "requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984) (internal quotation mark omitted) (quoting *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466 (1982)).

Under Wisconsin law, an earlier judgment has preclusive effect on a subsequent claim when there is "(1) an identity between the parties or their privies in the prior and present suits; (2) an identity between the causes of action in the two suits; and (3) a final judgment on the merits in a court of competent jurisdiction." *N. States Power Co. v. Bugher*, 189 Wis. 2d 541, 551, 525 N.W.2d 723, 729 (1995). To evaluate identity of causes of action, Wisconsin uses the "transactional approach," which "connotes a common nucleus of operative facts" and reflects "the expectation that parties who are given the capacity to present their 'entire controversies' shall in fact do so." *Fed. Nat'l Mtg. Assoc. v. Thompson*, 2018 WI 57, ¶ 36, 2018 WL 2374894 (quoting *Kruckenberg v. Harvey*, 2005 WI 43, ¶¶ 26–27, 279 Wis. 2d 520, 694 N.W.2d 879). The state court judgment on DeCoster's previous claim for litigation expenses clearly satisfies the conditions required to preclude any claim DeCoster could assert for litigation expenses in this court: DeCoster and the County were both parties to the suit before the circuit court, DeCoster sought reimbursement for his reasonable litigation expenses, the circuit court entered a judgment on the merits finding only some of his litigation expenses reasonable, and DeCoster pursued all available options for review in the Wisconsin Court of Appeals and the Wisconsin Supreme Court. DeCoster now seeks to recover

additional litigation expenses that were rejected in the state court proceeding. The earlier state court judgment precludes any such claim. And since the court has already determined that he is precluded from raising a Wisconsin law claim for litigation expenses here, there is no need to address the merits of the County's *Rooker–Feldman* argument.

## CONCLUSION

For the foregoing reasons, the County is entitled to judgment as a matter of law on both counts in DeCoster's complaint. The County's motion for summary judgment (ECF No. 15) is therefore **GRANTED**, and this action is dismissed. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** this 30th day of May, 2018.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court